No. 54419.—Little Joe Wiesenfeld Co. *v.* United States, protests 134232–K, etc. (Baltimore).

RAO, Judge: The merchandise the classification of which is here in issue consists of two types of saddle girths, conceded to be in chief value of cotton. The collector classified said articles as manufactures in chief value of cotton, not specially provided for, and assessed duty thereon at the rate of 40 per centum ad valorem, as provided for in paragraph 923 of the Tariff Act of 1930. The claim is made that such action was erroneous and that the merchandise more properly responds to the description in paragraph 1530 (f) of said act of parts of saddles valued at more than $40 each, dutiable at the rate of 20 per centum ad valorem, as provided for in the modification of said paragraph contained in the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753. By amendment to protest 136877–K, it is claimed that as to the merchandise covered thereby the appropriate rate of duty is 15 per centum ad valorem, pursuant to said paragraph 1530 (f), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Alternatively, the protests allege that all of the merchandise is dutiable at the rate of 15 per centum ad valorem, under said paragraph 1530 (f) as parts of saddles, not specially provided for.

Paragraph 1530 (f) of the Tariff Act of 1930, upon which the claims of the plaintiff are predicated, provides as follows:

Harness valued at more than $70 per set, single harness valued at more than $40, saddles valued at more that $40 each, saddlery, and parts (except metal parts) for any of the foregoing, 35 per centum ad valorem; saddles made wholly or in part of pigskin or imitation pigskin, 35 per centum ad valorem; saddles and harness, not specially provided for, parts thereof, except metal parts, and leather shoe laces, finished or unfinished, 15 per centum ad valorem.

The 35 per centum rate for saddles valued at more than $40 each, and parts thereof, and for saddles made of pigskin or imitation pigskin, was reduced to 20 per centum by the trade agreement with the United Kingdom and to 15 per centum by the General Agreement on Tariffs and Trade, *supra.*

Two samples of each of the types of saddle girths involved herein were introduced in evidence as plaintiff's exhibits 1 and 2, respectively. Exhibit 1, bearing

plaintiff's stock number 99, consists of a pair of cotton girths, with a metal buckle at either end. Plaintiff's exhibit 2, known as the "Fitz William" girth, stock number 97, likewise consists of a pair of cotton girths. It differs from exhibit 1 in that it is wider, and has two buckles at one end, and one at the other.

The evidence establishes that the articles represented by exhibits 1 and 2 are imported for, and used exclusively with, English saddles or with American-made English-type saddles and that all of such saddles are valued at considerably more than $40 each. It further appears that prior to the promulgation of the General Agreement on Tariffs and Trade, *supra*, on January 1, 1948, most of the saddles imported and sold by plaintiff were made of cowhide, but that after that date, saddles made wholly or in part of pigskin or imitation pigskin leather constituted the major portion of plaintiff's importations and sales in the United States. However, during the years 1947 and 1948, the period covered by the importations before the court, most of the English-type saddles in the United States, whether imported or of American manufacture, were made of pigskin.

It has been held that the term "saddle," as used in paragraph 1530 (f), *supra*, includes not only the bare or naked saddle, but also girths, stirrup leathers, and stirrup irons. *Goetz Saddlery Co. et al. v. United States*, 63 Treas. Dec. 1136, T. D. 46490, *Meyer v. United States*, 66 Treas. Dec. 551, T. D. 47355, *Little Joe Wiesenfeld Co. v. United States*, 10 Cust. Ct. 101, C. D. 731, reversed on other grounds, *United States v. Little Joe Wiesenfeld Co.*, 32 C. C. P. A. (Customs) 83, C. A. D. 290. Consequently, each of those items, if imported separately, would properly be described as a part of a saddle, and the instant merchandise must be so designated.

The question then arises as to whether the girths in issue, which are parts of saddles, valued at more than $40 each, and are used predominantly with saddles made of pigskin or imitation pigskin leather, but are equally susceptible of use on saddles, made of cowhide or other leathers, are provided for in paragraph 1530 (f) of the Tariff Act of 1930. The provisions of that paragraph, insofar as they are material herein, cover saddles valued at more than $40 each, saddlery, and parts of either, saddles made wholly or in part of pigskin or imitation pigskin, and saddles, not specially provided for, and parts thereof. The collector's action in classifying the instant merchandise under paragraph 923, *supra*, evidently results from the fact that the portion of paragraph 1530 (f), *supra*, which provides for saddles made wholly or in part of pigskin or imitation pigskin contains no provision for parts of such saddles. This omission, however, does not, in our opinion, preclude us from finding that the instant merchandise is specifically provided for as parts of saddles valued at more than $40 each.

In the case of *Vandiver v. United States*, 65 Treas. Dec. 1261, Abstract 26830, which involved an importation of saddle girths composed of wool, we were confronted with a situation similar to that in the case at bar. We there stated:

> The uncontradicted testimony in this case is to the effect that the articles in question are woolen saddle girths bound with cowhide leather for use on saddles valued at more than $40 each, such-priced saddles for the most part being composed wholly or in part of pigskin leather; that saddle girths are essential to the proper use of saddles and were, in the trade, included under the term "saddlery."
>
> \*        \*        \*        \*        \*        \*        \*
>
> The obvious intent of Congress was to tax at 35 percent ad valorem all saddles of whatever material composed, if valued at more than $40 each; all saddles composed wholly or in part of real or imitation pigskin, whatever the value; and saddlery. The special mention of pigskin saddles was to avoid any chance of such being included as unenumerated under the last clause of paragraph 1530 (f) subject to but 15 percent duties. Therefore the alternative claim made in the amendment of protest for entry at 15 percent is hereby overruled.

The collector, following the instructions of the Secretary of the Treasury in T. D. 44741, has in effect attempted to write into the statute an additional exception not made by Congress and therefore not intended. The sole exception

from either of the rates prescribed in paragraph 1530 (f), to wit, 35 or 15 percent ad valorem, is as to metal parts. Wool is not metal. Therefore, the action of the collector in levying and collecting 50 cents per pound, plus 50 percent ad valorem is hereby overruled.

We believe the rationale of the decision in the *Vandiver* case, *supra*, to be sound and convincing, and see no reason for departing from the conclusion reached therein. Furthermore, although the instant merchandise can aptly be described as parts of pigskin or imitation pigskin saddles, and would properly fall within the scope of a provision for the same, if there were such in the Tariff Act of 1930, nevertheless, they are also correctly described as parts of saddles valued at more than $40 each, for which articles there is specific provision in paragraph 1530 (f), *supra*, and we hold them to be dutiable thereunder.

In view of the foregoing, and of the fact that the instant merchandise consists of parts of saddles which have been specially provided for, the alternative claim in the protest is denied.

We hold, therefore, that the merchandise covered by protests 134232–K, 134233–K, and 136875–K is dutiable at the rate of 20 per centum ad valorem pursuant to paragraph 1530 (f) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, *supra*, and that the importation involved in protest 136877–K is dutiable at the rate of 15 per centum ad valorem, as provided for in said paragraph 1530 (f), as modified by the General Agreement on Tariffs and Trade, *supra*.

Judgment will issue in accordance with our decision herein.